[L. A. No. 3077.  In Bank.—April 11, 1914.]

THE PEOPLE, Upon Information of U. S. Webb, Attorney-General, Respondent, v. BANNING COMPANY et al., Appellants.

TIDE LAND—PATENT DOES NOT CONVEY ABSOLUTE ESTATE FREE FROM EASEMENT.—A patent for tide lands does not convey to the patentee the absolute estate in the land free from the public easement for navigation and fishery.

ID.—RESERVATION OF TIDE LAND FROM SALE—EFFECT OF PURCHASE DURING PERIOD OF RESERVATION.—The approval of an application to purchase swamp or tide land, the acceptance of the purchase money, and the issuance of patent during a period when the land is reserved from sale, are unauthorized acts and the patent is void.

ID.—STATUTE OF LIMITATIONS—ACTION BY STATE TO QUIET TITLE.—The words "right or title" in the first subdivision of section 315 of the Code of Civil Procedure, limiting the time in which the people will sue in respect to real property, refer to the right or title of the state to sue, not to the right or title upon which the state bases its right to sue; and under this section an action by the state to quiet title to lands may be brought at any time within ten years after the cause of action accrues.

ID.—OPERATION OF STATUTE OF LIMITATIONS—PRESUMPTION OF GRANT. The running of the statute of limitations does not depend upon the presumption of the existence of any grant.

ID.—ADVERSE POSSESSION—EFFECT AS AGAINST STATE.—The statute of limitations operates upon the state, with respect to any property not dedicated or held for a public use, as soon as adverse possession thereof begins, without regard to the existence or presumed existence of a lawful grant. And an adverse occupancy for the period of limitation confers title to the property occupied, regardless of the possible existence of a previous grant. But this applies, so far as the state is concerned, to proprietary land alone; it does not apply to property dedicated to public use.

ID.—SWAMP LANDS—ACTION BY STATE TO QUIET TITLE BARRED IN TEN YEARS.—An action by the state to quiet title to swamp lands which have been held in actual adverse possession for more than ten years by persons claiming under a state patent, the former ownership by the state having been in its proprietary capacity, is barred by the provisions of section 315 of the Code of Civil Procedure.

ID.—LITTORAL RIGHTS OF OWNER OF SWAMP LANDS—PUBLIC EASEMENT OF NAVIGATION.—Littoral rights of swamp land owners over adjoining tide lands and waters are subject and subordinate to the public

right of navigation and fishery. Such littoral rights are not greater against the state than against the United States, with respect to the public easement for navigation held concurrently by the two sovereignties, the one for intrastate and general navigation, the other for interstate and foreign navigation.

ID.—EASEMENT OF NAVIGATION AND FISHERY—ADVERSE POSSESSION.—
Title to tide lands cannot be acquired against the state by adverse possession so as to affect the public easement of navigation and fishery.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher, J. W. McKinley, Frank Karr, W. R. Millar, E. E. Bacon, Ward Chapman, Sheldon Borden, and O'Melveny, Stevens & Millikin, for Appellants.

U. S. Webb, Attorney-General, Anderson & Anderson, Leslie R. Hewitt, John W. Shenk, and A. P. Fleming, for Respondent.

THE COURT.—Since the order was made in this case, granting a rehearing after the judgment of this court rendered on December 20, 1913, the appellant, the Kerckhoff-Cuzner Mill and Lumber Company, has waived and abandoned all right or interest which it may have had in and to the small parcels of tide lands hereinafter mentioned, reserving only any rights it may have under any valid wharf franchises, and the parties thereupon have stipulated that the cause may again be submitted without further argument upon the other questions presented by the appeal. The rehearing was granted mainly for the purpose of again considering the question presented upon the claim to these tide lands. In view of this abandonment by said appellant we find it unnecessary to consider the case further, being satisfied with the opinion on the other questions discussed therein as heretofore filed. We therefore adopt the following portions of said opinion as the opinion of the court:

"The defendants appeal from the judgment and from an order denying their motion for a new trial.

"This is one of the series of cases mentioned in the opinion of *People* v. *California Fish Co.* (L. A. No. 3060),_166 Cal. 576, [138 Pac. 79]. The claim of the appellants that a patent for tide lands would convey to the patentee the absolute estate in the land free from the public easement for navigation and fishery, and the claim that land within two miles of the town of Wilmington, as incorporated by the act of 1872, was not reserved from sale, are both disposed of adversely to the appellants by the opinion in that case. No further discussion of those claims is necessary.

"In the present case, and in L. A. No. 3061 of the series of cases referred to, the appellants claim that they were in adverse possession of the land for more than ten years before the action was begun and, consequently, that they have title thereto by prescription and that the action is barred by the statute of limitations. Some minor questions involved are also omitted from case No. 3060. We proceed to the consideration of these questions.

"The land here in controversy consists of two tracts, one known as tide land location 144, containing 198.65 acres, the other swamp land location 3088, containing 55.29 acres. One defendant also claims under tide land location 68, which in part overlaps swamp land location 3088. The application and survey for tide land location 68 were filed on December 23, 1878. The first payment was made on March 7, 1882. The last payment was on December 24, 1890, and the patent was issued on October 16, 1894. It does not appear that any payment was made during the interval between the repeal of the act incorporating Wilmington and the incorporation of San Pedro on March 1, 1888. Under the principles stated in case No. 3060 aforesaid, the land was reserved from sale from 1872 until 1887, when the Wilmington Act was repealed, and again for the time ensuing the incorporation of San Pedro. Hence the approval' of the application and survey, the acceptance of the purchase money, and the issuance of the patent for tide land location 68 were each without authority and the patent therefor was void.

"The land embraced in tide land location 144 and in swamp land location 3088 is all within two miles of the corporate limits of the city of San Pedro, incorporated March 1, 1888. From that date forward all these tide lands were

reserved from sale by the constitutional reservation and both the swamp land and the tide land were reserved from sale by section 3488 of the Political Code, until the year 1901, when the reservation of swamp lands was eliminated therefrom by amendment. The application and survey for tide land location 144 were filed March 9, 1887. The approval thereof was made on May 14, 1888, which was after the incorporation of San Pedro, and there is no showing that any payment was made before that date. All the other proceedings leading up to the patent in No. 144, and all the proceedings in swamp land location 3088 occurred after said incorporation. The patents for both these locations were issued on October 16, 1894. It follows that both patents are void because of the fact that the lands were reserved during the time when the proceedings for the sale took place.

"The defendants pleaded the bar of the statute of limitations contained in section 315 of the Code of Civil Procedure, which is as follows:

" 'The people of this state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless—

" '1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced; or

" '2. The people, or those from whom they claim, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years.'

"The words 'right or title' in the first subdivision must of necessity refer to the right or title of the state to sue, not to the right or title upon which the state bases its right to sue. If this were not so, the state could not maintain an action in respect to land to which it held title for more than ten years prior to the beginning of the action, although the invasion of its rights which created the cause of action had been very recent and within ten years. This question was presented in *People* v. *Center*, 66 Cal. 564, [5 Pac. 263, 6 Pac. 481], and it was there held that the first clause should be construed as if it read: '1. Such *cause of action* shall have accrued within ten years,' etc. We fully approve that decision and hold that to be the proper construction of the section.

"The court found that a certain parcel of land in controversy had been held and occupied by the Kerckhoff-Cuzner Mill and Lumber Company, adversely to the state and under claim of title against it, continuously for more than ten years before the action was begun. Upon this finding it is contended that the action was barred by the aforesaid statute of limitations and that title by prescription has been acquired thereto by that company. This land, for the most part, is embraced in swamp land location 3088 and is above the line of ordinary high tide, being of the class described as swamp land. Some small portions of the land thus occupied and claimed is tide land.

"Counsel for plaintiff, in argument, admit that the swamp lands of the state are proprietary lands, capable of being acquired by adverse possession, if there is no rule of law which prevents the operation of the statute of limitations against the state with reference to them. They contend, however, that the reservation of the land from sale operated as a dedication to public use, or as a declaration that the lands are held in trust for public purposes, and that the statute of limitations does not run against the state with respect to land so dedicated or held, and, consequently, that the state cannot be disseized thereof by adverse possession. The court below took this view of the question. To sustain this point the plaintiff relies upon a passage from *Hoadley* v. *San Francisco,* 50 Cal. 275, to the effect that the land there claimed, being land granted by the United States to San Francisco for public use, was 'held for that purpose only' and could not be conveyed to private persons, and that 'the city having no authority to convey the title, private parties are virtually precluded from acquiring it.' The argument from this case appears to be based upon the theory that the land there referred to was the entire body of land granted to San Francisco by the act of Congress of July 1, 1864, (13 U. S. Stats. 333), proprietary in character and subject to sale by the city. A careful analysis of the case shows that this is not true. The land in litigation consisted of public squares which had been dedicated as such by the city and the state before the passage of the act of 1864. The congressional grant to the city of all the pueblo lands 'for the uses and purposes specified in the ordinance of said city, ratified by an act of the legislature,' recognized the

previous dedication of these public squares to public use as such, and gave them to the city in trust for that purpose. It was these squares, so dedicated, of which the court was speaking in the passage relied on, and not the proprietary lands included in the grant. The decision does not hold that lands granted by the United States to the state for general public purposes, as for example the school lands granted in aid of general education or the swamp lands granted for reclamation and tillage or other private use, are withdrawn from commerce, or held in trust for public use. The grant in that case, being, in effect, a grant by the United States to the city for public use as a public square, created a public trust which the city having accepted could not revoke, and hence, it was held that the city could not be deprived of this public land by adverse possession or by the statute of limitations. It was a trust created by the holder of the paramount title. In the present case, the reservation was made by the state itself. The state could revoke the reservation at any time. It was a mere restriction upon a general power delegated to its officers. No public purpose or public use was declared. The swamp lands had not been previously dedicated to any public use. The reservation merely withheld them from sale. No dedication to public use is to be implied therefrom. The reservation left them in precisely the same condition as they were in before any law authorizing a sale was enacted, that is, as proprietary lands of the state subject to adverse possession and the running of the statute of limitations. (*Ames* v. *City of San Diego,* 101 Cal. 390, [35 Pac. 1005] ; *San Diego* v. *Linda Vista Irr. Dist.,* 108 Cal. 196, [35 L. R. A. 33, 41 Pac. 291].) Ordinarily, the mere possession of state lands of this character by one not in privity with the state, nor claiming under it, will not be adverse, so as to set the statute in motion. The state is deemed to acquiesce in such possession by private persons and it is considered as permissive only. This is the basis of section 1006 of the Civil Code. But this is not necessarily the case, and as the court found that possession in this case was adverse to the title of the state, and as that finding cannot be here reviewed, since it is in favor of the appellant, it must be assumed to be supported by sufficient evidence.

"Counsel for appellants also advance the proposition that the presumption of an ancient grant is the basis of the doctrine of prescription and that there can be no such presumption where no grant could have been legally made. The code defines the method of gaining such title and does not declare that it must be based on the presumption of a grant. (Civ. Code, sec. 1007.) The running of the statute of limitations does not depend upon the presumption of the existence of any grant. It operates upon the state, with respect to any property not dedicated or held for a public use, as soon as adverse possession thereof begins, without regard to the existence or presumed existence of a lawful grant. By the section cited an adverse occupancy for the period of limitation confers title to the property occupied, regardless of the possible existence of a previous grant. This, of course, applies, so far as the state is concerned, to proprietary land alone. It does not apply to property dedicated to public use. (See 46 Am. St. Rep. 492, note.) We therefore hold that, as to swamp lands which have been held in actual adverse possession for more than ten years by one claiming under a state patent, the action is barred by the provisions of section 315 of the Code of Civil Procedure.

"The defendants owning the swamp land claim littoral rights over the adjoining tide lands and waters, as owners of land riparian to the bay. It is unnecessary to discuss this claim at length. Such rights are not greater against the state than against the United States, with respect to the public easement for navigation held concurrently by the two sovereignties, the one for intrastate and general navigation, the other for interstate and foreign navigation. The private littoral rights of riparian proprietors are always subject and subordinate to the public easement for these purposes. (*United States* v. *Chandler-Dunbar Water Power Co.*, 229 U. S. 53, [57 L. Ed. 1063, 33 Sup. Ct. Rep. 667]; *Gibson* v. *United States*, 166 U. S. 272, [41 L. Ed. 996, 17 Sup. Ct. Rep. 578]; *Scranton* v. *Wheeler*, 179 U. S. 141, [45 L. Ed. 126, 21 Sup. Ct. Rep. 48]; *Gilman* v. *Philadelphia*, 70 U. S. 725, [18 L. Ed. 99].

"The part which is tide land is subject to the public uses of navigation and fishery, as is fully shown in the opinion in No. 3060. It is dedicated to the public uses. With respect

to the public easement thus constituted, it is settled by a long line of decisions in this state that there can be no adverse possession sufficient to set in motion the statute of limitations against any action by the state or its authorized agencies to assert the public right or so as to give title by prescription to the adverse claimant against the public easement. This proposition was directly involved in *People* v. *Kerber,* 152 Cal. 733, [125 Am. St. Rep. 93, 93 Pac. 878]. It was there held that the public easement was not affected, impaired or destroyed by such adverse possession, no matter how long continued. We refer to the opinion in that case for a citation to the other cases in this state deciding the same proposition. Hence it follows that the claim under the statute of limitations and to title by prescription cannot in any wise affect the right of the state or of the public to use the land for the public purposes connected with the aforesaid easements. (See, also, Civ. Code, sec. 3490; *Mining Debris case,* (*Woodruff* v. *North Bloomfield G. M. Co.*), 9 Sawy. 513, [16 Fed. 25] ; *Schneider* v. *Hutchinson,* 76 Am. St. Rep., note, p. 492.)''

The abandonment by the appellant of the claim to the small parcels of tide land adjoining this swamp land makes it unnecessary to consider the questions arising with respect to the right of the appellant to the subordinate fee of said land subject to the public easement for navigation under or by virtue of any adverse possession it may have had thereof. As to the swamp land so adversely held by the appellant the judgment should be that said company is the owner thereof. With respect to the tide lands the judgment should be that the appellant has no interest therein.

It is ordered that the judgment against the Kerckhoff-Cuzner Mill and Lumber Company be vacated and that the court below proceed, upon the findings it has heretofore made in this action, to enter the judgment of the court declaring, in accordance with this opinion, the interest and title of the plaintiff and of the Kerckhoff-Cuzner Mill and Lumber Company, respectively, to the swamp land which that company had held in adverse possession for more than ten years before the action was begun.

The order denying a new trial is affirmed. As to all the defendants, except the Kerckhoff-Cuzner Mill and Lumber Company, the judgment is affirmed.