[S. F. No. 6343.    In Bank.—October 2, 1914.]

HENRY DALTON & SONS COMPANY (a Corporation), Appellant, v. CITY OF OAKLAND (a Municipal Corporation), Respondent.

NAVIGABLE WATERS—LITTORAL OR RIPARIAN OWNER—RIGHT OF ACCESS TO DEEP WATER OVER INTERVENING · TIDE LAND.—A littoral or riparian owner of land on a navigable bay has no right of access to deep water over intervening tidelands which the state has granted to a city in trust for the purpose of improving its harbor in aid of navigation and commerce; and hence he cannot have such improvements, which will deprive him of access to the navigable water, enjoined.

ID.—IMPROVEMENT OF NAVIGABLE WATERS—RELATIVE RIGHTS OF FEDERAL AND LOCAL GOVERNMENTS.—While the paramount right exists in the United States government under the provisions of the federal constitution to regulate and control the improvement of navigable waters, still, in the absence of any legislation by Congress or acts thereunder by the federal authorities, the states have the right to improve their navigable water-ways and harbors. The only limitation on this power is that it must be exercised in subordination to the control of the general government over the subject, and such local system must not interfere with free navigation or defeat any system for the improvement of navigation provided for by the general government.

ID.—GRANT OF TIDE LAND TO CITY—POWER OF STATE TO MAKE.—The state has authority to grant to the city of Oakland tide and submerged lands on the bay of San Francisco, in trust for the purpose of improving its harbor in aid of navigation and commerce.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge.

The facts are stated in the opinion of the court.

Z. N. Goldsby, and H. D. Gill, for Appellant.

Ben F. Woolner, for Respondent.

LORIGAN, J.—This action is brought by plaintiff as a private corporation and for its own benefit to enjoin the defendant from making certain proposed municipal improvements along its harbor in the bay of San Francisco.

The complaint is in four counts, but a general statement of its allegations will present the grounds upon which plaintiff bases its right to relief.

It is alleged that plaintiff is the owner of a lot of land in the city of Oakland bordering on the line of ordinary high tide in the bay of San Francisco, in which the harbor of Oakland lies, as the line of said ordinary high tide existed in 1852; that upon this lot it has established and for many years past has conducted a large manufacturing plant and business; that extending seaward some one thousand five hundred feet from said lot and in front of it is a strip of tide land alternately covered and uncovered by the daily and ordinary influx and reflux of the waters of the bay over which for over two hundred feet plaintiff has constructed and maintained a wharf and landing; that at high tides the waters covering said tidelands are not navigable for deep draft vessels but at such tides light draft vessels may be navigated over them and such are navigated and used by plaintiff in doing its shipping from said landing and wharf to and over the deep waters of the bay; that the defendant city of Oakland has exclusive jurisdiction, management, and control of the harbor of said city situated in said bay and in contemplation of the development and improvement thereof has arranged for the establishment and construction of a system of municipal wharves and docks therein, together with the necessary adjuncts and appendages thereto to be constructed along its entire waterfront and as an integral part thereof has arranged for and commenced the construction of a seawall directly facing and fronting the land of the plaintiff and about four thousand feet therefrom; that this seawall, if constructed, will, in connection with other improvements already made in said harbor, present an impassable barrier and obstruction to the navigation from said waters of the bay shoreward from said seawall; prevent access to and from the said land of the plaintiff by

water and deprive it of free passage to and egress from the navigable waters of said bay; that these acts done and threatened constitute a present and continuing nuisance specially injurious to plaintiff and from which it has and will suffer great and irreparable injury unless restrained by the court.

The prayer was for an injunction restraining defendant from prosecuting such proposed improvement.

A demurrer to the complaint was sustained without leave to amend and from the judgment thereon entered in favor of the defendant the plaintiff appeals.

It will be observed that plaintiff does not claim any ownership in the tidelands in front of its property, nor that it possesses any franchise or permit granted it by the state or municipal authorities under which its wharf and landing over said tidelands were constructed. In fact, it is not questioned but that these intervening tidelands were granted by the state to the town of Oakland as part of its waterfront under the act of 1852 incorporating that town, subject only to the right of the public to use them for purposes of navigation and fishery and charged with the public trust of improving said waterfront by the erection of wharves, docks, piers, and such other constructions in its harbor as are essential to facilitate and aid commerce and navigation therein. (*Oakland* v. *Oakland Waterfront Co.,* 118 Cal. 160, [50 Pac. 277]; *Cimpher* v. *City of Oakland,* 162 Cal. 87, [121 Pac. 374]; *Oakland* v. *Oakland Waterfront Co.,* 162 Cal. 675, [124 Pac. 251].)

Further, by an act of May 1, 1911 (Stats. 1911, p. 1258), the state in terms further granted to the city of Oakland the tide and submerged lands lying in front of the land of plaintiff and the deep waters of the bay in trust and imposed on the city the duty of using said lands for the establishment, management, and conduct of a harbor and for the construction and maintenance thereon of wharves, docks, piers, slips, and other utilities and structures necessary or convenient for the promotion and accommodation of commerce and navigation. · It is quite clear from the allegations of the complaint, in fact is not questioned, that the improvements which the city of Oakland is making in its harbor are in discharge of the trust and duty imposed upon it under the acts of the legislature and for the promotion of navigation and commerce therein.

CLXVIII Cal.—30

The theory under which appellant framed its complaint is that as a littoral or riparian owner of property fronting on the bay and irrespective of who may be the owner of the tidelands lying between high-water mark and its deep waters, plaintiff by reason of such ownership of the upland possesses certain rights incident thereto, including the right to free and unobstructed access over such tidelands, to construct suitable landings thereon and to enjoy exclusive occupancy thereof subject only to the paramount public right of navigation; that the city has no right to erect structures, such as it contemplates, which will cut off access from the lands of plaintiff to the deep waters of the bay and destroy its right of navigation over them.

Counsel for appellant has discussed these propositions very thoroughly in his brief, citing cases which he contends sustain this position. Many of the cited authorities apparently do so, but they are cases which arose in other jurisdictions where the laws relative to the rights of littoral or riparian owners on navigable waters are different from ours. Such rights depend upon the local laws of the different states and if plaintiff possesses the littoral or riparian rights which it claims by virtue of the ownership of its upland lot they must be found to be conferred under some law of this state. But under our laws plaintiff as littoral or riparian owner has no right of access as to the deep waters of the bay over intervening tidelands.

In *People ex rel.* v. *Southern Pacific R. R. Co.*, 166 Cal. 627, [138 Pac. 103], decided since the appeal in this case was taken, this court had occasion to determine whether any such right existed in favor of a littoral or riparian owner and it was decided that it did not. It was there said: "The defendants have a parcel of upland adjoining the tidelands in controversy and they claim the right, as riparian proprietors, to wharf out and use the tideland in front of their upland for navigation in connection with the upland. It is settled by the decision of the supreme court of the United States in the case of *United States* v. *Chandler-Dunbar W. P. Co.*, 229 U. S. 53, [57 L. Ed. 1063, 33 Sup. Ct. Rep. 667], decided May 26. 1913, that when the riparian proprietor holds title to the soil under the water in front of his upland, and holds it by virtue of his riparian ownership, in fee, such title is subject to the public easements of navigation and fishery, that

when the public authorities see fit to make improvements on the land below high-water mark for purposes of navigation, the riparian owner must yield thereto, and that his right is subordinate to the public rights. There are many other decisions of the supreme court of the United States substantially to the same effect. Under these authorities it is apparent that the littoral rights of the defendants cannot impinge upon the control by the state of tidelands for the public purposes of navigation and fishery, or affect the public easement for those purposes.''

We are not concerned here with what may be the rights of an upland proprietor to restrain a stranger from erecting structures upon intervening tidelands which will prevent his free access to the navigable waters. (*San Francisco Sav. Union* v. *R. G. D. Petroleum Co.*, 144 Cal. 137, [103 Am. St. Rep. 72, 1 Ann. Cas. 182, 66 L. R. A. 242, 77 Pac. 823].) We are considering only the complaint of the plaintiff against the action of the state through its agency, the city of Oakland, in the erection of improvements on the tidelands within its harbor which will deprive it of such access. This the state had a right to do even though this result followed, as it had equally a right to authorize the city of Oakland as its agency to do it.

While the paramount right exists in the United States government under the provisions of the federal constitution to regulate and control the improvements of navigable waters, still in the absence of any legislation by Congress or acts thereunder by the federal authorities the states have the right to improve their navigable waterways and harbors. The only limitation on this power is that it must be exercised in subordination to the control of the general government over the subject and such local system must not interfere with free navigation or defeat any system for the improvement of such navigation provided for by such general government. (*County of Mobile* v. *Kimball*, 102 U. S. 691, [26 L. Ed. 238] ; *People* v. *California Fish Co.*, 166 Cal. 576, 600, [138 Pac. 79].)

Under these authorities there can be no question but that the state had authority to make the grants which it did of these tide and submerged lands to the city of Oakland in trust for the purpose of improving its harbor in aid of navigation and commerce, as there can likewise be no question but that

the improvements which the city was making and contemplated doing by the scheme it had devised were such as were imposed on it by the act of the legislature referred to and were designed to effect that purpose.

It is not questioned but that the improvements contemplated by the city in the harbor are projected in good faith or that they will not accomplish the purpose designed. If such improvements have the effect of cutting off access over said tidelands from the upland lot of the plaintiff, it is no ground of complaint because, as pointed out, it had no right as an upland owner to the free and unobstructed access to navigable waters over said tidelands as against the right of the state to at any time devote them to the improvement of the harbor of Oakland in aid of the public easement of navigation and commerce or transfer them, as it did, to the city of Oakland, charged with the duty and obligation of doing so.

The judgment is affirmed.

Henshaw, J., Sloss, J., Shaw, J., Melvin, J., and Sullivan, C. J., concurred.